Jones, J.
 

 The real questions in this case have been somewhat confused by the evocation and discussion of the principle announced in
 
 Railroad Co.
 
 v.
 
 Harvey, 77
 
 Ohio St., 235, 83 N. E., 66. Under
 
 *111
 
 the allegations of the second amended petition, sustained to some extent by the testimony of the plaintiff’s witnesses, the rule announced in
 
 Harriman
 
 v.
 
 Railway Co.,
 
 45 Ohio St., 11, 12 N. E., 451, 4 Am. St. Rep., 507, is more applicable. This case does not present a situation where the instrumentality is upon private premises, where the occupier owes no duty to children who approach the same. The infant had a lawful right to the use of the street and was not a mere licensee. In discussing the
 
 Harriman case, supra,
 
 Williams, J., on page 20 (12 N. E., 454), said:
 

 “It is apparent that there may be a substantial difference between absolving the owner from the active duty of providing against the danger of accident to a trespasser upon his premises, or one who enters the same as a mere licensee, and giving him the same immunity when he knowingly places a highly explosive and dangerous instrument or agent in the way that he knows the licensee — a child of tender years — is habitually accustomed to go, and where an ordinarily prudent person would reasonably expect him to go, and be thereby injured. ’ ’
 

 On the issue of’ negligence, the jury found in favor of the plaintiff. The testimony presented by the plaintiff tended to prove that the barricade had been erected by the contractor in order to prevent travel upon the newly constructed pavement; that the contractor and employes in charge of the work knew that children were accustomed to play about the dump wagon and were moving the same from place to place during the construction of the pavement. Some of the plaintiff’s witnesses
 
 *112
 
 testified that the wagon, was not secured, and others that it was so insufficiently secured that children could easily remove the cable passing through the wheels of the wagon. Testimony was offered that immediately after the accident this wagon was secured by a chain cable passing through the wheels and fastened securely at the end by a lock. Testimony was also introduced that De Grroodt was advised shortly before the accident occurred of danger to the children in permitting the wagon to be unsecured. A Mrs. Archer told him, “It is an awful thing your leaving these wagons — there will be some deaths around here.” A Mrs. Masic testified that, after the bricks were laid in the pavement and while cement was being placed thereon, she admonished De Grroodt that these wagons were “pretty dangerous” and that he answered it “was his own business.” So the case presented for the determination of the jury was whether the contractor, with the knowledge of the danger that might ensue in permitting the dump wagon to be unsecured in a locality where small children were continuously playing about, had exercised the care which ordinarily prudent men would have exercised under like circumstances. It may be conceded that the wagon was used as a part of the barricade by permission of the city authorities, but it must also be conceded that the lad had a lawful right to use the street. Although lawfully in the street, the courts divide upon the question whether a child becomes a trespasser by meddling with an instrumentality in the public street. But even if he be considered a trespasser, within the rule applied to private
 
 *113
 
 premises, if the contractor gained knowledge or information of the peril that might result to small children from the continued use of such instrumentality, a legal duty might arise which would require him to avoid that peril. In that respect, he would he required to act as reasonably prudent men act under like circumstances. This rule of liability was fully covered and given to the jury in the charge of the trial court, and we think is supported by the following cases:
 
 Lynch
 
 v.
 
 Nurdin,
 
 1 Q. B., 29, cited in the
 
 Harriman case, supra; Westerfield
 
 v.
 
 Levis Bros.,
 
 43 La. Ann., 63, 9 South., 52; and
 
 Kelley
 
 v.
 
 Parker-Washington Co.,
 
 107 Mo. App., 490, 81 S. W., 631, where the syllabus states the principle as follows:
 

 “It is negligence for the owner to leave dangerous machinery on his premises in a condition likely to cause injury; and a contractor for grading a street who leaves a scraper in the street liable to inflict injury on children attracted thereby, is guilty of negligence and such children are not trespassers, since the contractor’s possession of the street is not exclusive.”
 

 In the trial court there was a defense of contributory negligence, but plaintiff in error evidently attaches but little importance to that issue, for it is not discussed. In view of the infant’s age he could not be held culpable of contributory negligence, since an infant of five or six years could hardly appreciate the danger imminent from starting this dump wagon down the descending grade of the street. There are two questions presented by this record, however, which are of some- importance.
 

 
 *114
 
 Over the objection of the defendant, one Mrs. Archer was allowed to testify that after the accident Mr. De Grroodt, the defendant, approached her with an offer of money for “standing on my side,” and that defendant said to her that she “could make money on it.” She testified that she answered, “don’t mention money; it is all right.” This statement was made by a party, was an admission against interest, and was prejudicial if incompetent. Was the testimony competent in chief? There is no doubt, if De Grroodt had been examined upon that subject and denied the conversation, that the conversation could be introduced. However, De Grroodt being later a party to the case, any admission or statement made against his own interest touching that incident was competent. No authorities have been cited to us by plaintiff in error challenging the competency of this testimony. Its competency, however, is sustained by various texts, notably 2 Jones on Evidence, Section 236, and 2 Wigmore on Evidence (2d. Ed.), Section 1048. In the former text we find the following:
 

 “It has always been competent to show admissions made by the parties to the record whether those admissions were made while testifying as a witness, or were made upon the streets. Such statements are evidence for the adverse party. If the testimony is of such a character as to constitute an admission of the party, it is not necessary to lay the foundation for its reception, or even to cross-examine the party on the subject. The reason for the admission of such statements is both clear and compelling. They are admitted be
 
 *115
 
 cause conduct of a party to the proceeding, in respect to the matter in dispute, whether by acts, speech, or writing, which is clearly inconsistent with the truth of his contention, is a fact relevant to the issue. * * * When a party to a civil action has made admissions of facts material to the issue, they are, as a rule, admissible against him.”
 

 It is also urged that the trial court erred in admitting in evidence the section of the ordinance, and in its charge to the jury respecting that subject. Plaintiff in error argues that this ordinance does not apply to any vehicle other than those used by hucksters and others who use the streets for trade and are required to secure a license therefor. Even upon that assumption no prejudicial error ensued. The court charged the jury that “before one can be held liable for the violation of any ordinance in this manner, it must be first shown that such negligence was the proximate cause of the injury complained of.”
 

 The trial court further charged the jury that if they found there was such a violation in failing to get a license fromi the mayor that “it will then become your duty to determine whether or not the negligence in this particular was the proximate cause of the death of the plaintiff’s decedent, •Velemir Skrbina. That is, did the..- failure to obtain a license to permit the wagon to stand in and upon Oakland avenue, at the time and place in question, directly cause the death of Velemir Skrbina? Now, if you find that mere failure to obtain such license and permit to allow such wagon to stand there upon Oakland avenue,
 
 *116
 
 at the time and place in question, was not the proximate cause of'the death of the plaintiff’s decedent, then, with respect to this claim of negligence, you should find in favor of the defendant.”
 

 It would he absurd to claim that under any feature of the case presented by this record the securing or failing to secure a license had anything whatever to do with the injury. Had the license been secured, the accident would have happened exactly in the same manner. The proximate cause of the accident did not result from the securing or failing to secure the permit, but in failing to secure this dump wagon under circumstances where ordinarily prudent persons might apprehend danger to children who from time to time had been moving it about. So, even if we concede the assumption of plaintiff in error, that the ordinance did not cover this situation, there could be no prejudicial error under the charge of the court.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Matthias, Day, and Allen, JJ., concur.