### SCHULTZ et ux. v. KINABREW et al.
#### No. 16773.

Court of Appeal of Louisiana. Orleans.

Dec. 13, 1937.

Leslie P. Beard, of New Orleans, for appellants.

Hugh M. Wilkinson, A. Miles Coe, Harry Nowalsky, Geo. M. Leppert, and

John D. Lambert, all of New Orleans, for appellees.

McCALEB, Judge.

On the morning of January 16, 1935, while David Schultz, the 3 year old son of the plaintiffs, was playing in the rear yard of the premises No. 4514 Prytania street (commonly called "Prytania Apartments") in the city of New Orleans, he discovered a can of lye which had been left unguarded on the pavement near the boiler room (located at the rear of the building) by the negro janitor of the apartment house. The child, evidently in a playful fashion, handled the object, and being unable to appreciate the dangerous properties of its contents, removed some of the chemical with his hand and rubbed it on the right side of his face. As a consequence, he suffered lye burns on the upper and lower eyelids of his right eye.

This suit has been brought by the child's parents, Mr. and Mrs. Sol Joseph Schultz, seeking redress in damages on his behalf in the sum of $10,088 for the injuries received by him in the accident. They assert that John M. Kinabrew, the owner and operator of the apartment house, and Albert Johnson, his employee, are responsible in solido for the hurts received by the child and aver that the defendant Johnson was guilty of negligence in leaving, unattended, the can of lye in the rear of the premises where he knew or should have known it would be accessible to their child.

Liability is resisted by the defendants on the ground that Johnson was without fault in the premises.

On the issue joined by the petition and answer, a trial was had. The district judge, after hearing the evidence, was of the opinion that it was gross negligence for Johnson to permit the can of lye to remain loosely about the premises, unprotected and unguarded, within the reach of children of tender years. Accordingly, he entered judgment in favor of the plaintiffs, for the use and benefit of their child, and against the defendants in solido for the sum of $1,000, and further granted judgment in favor of the child's father in the sum of $88 for medication, etc., expended by the latter as a result of the accident.

From this judgment both defendants have appealed. The plaintiffs have answered the appeals and asked that the award granted to them by the lower court be increased to $10,000.

The facts of the case are not seriously disputed, and we find them to be as follows:

The defendant Kinabrew is the owner and operator of the Prytania Apartments and the defendant Johnson is employed by the former as janitor of the building. On January 16, 1935, and prior thereto, the plaintiffs, with their two small children, lived in this apartment house, occupying Apartment No. 4 under lease from Kinabrew.

On the morning of the above-mentioned date, the defendant Johnson was engaged in cleaning with lye the tile foyer located at the entrance of the apartment house. Upon completion of his work, he carried his cleansing utensils, which included a can of red seal lye, to the rear of the premises with the intention of depositing the equipment in the boiler room, which is located in the rear of the building near the apartment occupied by the plaintiffs and their children. While he was thus engaged, a Mrs. Clark, one of the tenants of the house, summoned Johnson to come to her apartment immediately. At the time Johnson received this call, he had reached the rear steps of the premises but had not arrived at the boiler room. Instead of continuing on to the boiler room and storing the cleansing equipment, prior to answering the call of Mrs. Clark, Johnson left the same (including the can of lye) on the pavement in the rear of the building leading to the boiler room and repaired to the apartment of Mrs. Clark. During his absence, the plaintiffs' minor child, David, discovered the can of lye and, being obviously attracted to it because of its red, black, and yellow label, picked it up for the purpose of investigating its contents. In handling the can of lye, he rubbed some of the chemical on his face and as a result suffered the burns which have given rise to this suit.

The questions presented to us for decision, with respect to defendants' liability, are (1) whether lye is a dangerous article, and (2) if it is, was Johnson negligent in leaving the can within the reach of this young child.

The district judge, in his reasons for judgment, said: "While lye is an ordinary household article, used by many housekeepers in cleaning, it is likewise recognized by every member of the household as a dangerous article to be left lying loosely around where there might come in contact with it not only small children but even

grown persons. Lye is a very strong caustic and even when used by a person of age and experience must be handled with a great deal of care and caution, otherwise any portion of the body with which it may come in contact is subject to severe burns."

We fully agree with these observations, and, unless it can be determined that Johnson was free from fault in leaving the can of lye unguarded on the premises, liability will ensue.

Pretermitting the consideration of that point for the moment, it is pertinent to note that the plaintiffs contend that the attractive nuisance doctrine governs the case. Likewise, counsel for the defendants suggests that, unless we hold that the can of lye is an attractive nuisance, there can be no recovery. But these postulations are erroneous because that doctrine applies only in cases where the injured child is technically a trespasser upon the defendant's property. The theory of the imposition of liability in cases falling within the attractive nuisance principle is that, although the danger of the object or device is apparent to those who have reached years of discretion, the object itself is so enticing and alluring to children of tender years as to induce them to approach, get upon or use it and that this attractiveness amounts to an implied invitation to such children. Corpus Juris, vol. 45, pp. 760 and 761, states: "According to this view, children who are thus induced to enter upon the premises or use the dangerous instrumentality do not become trespassers, and the owner or person in charge owes to them, the same as to other invitees, the duty to exercise ordinary care to render the premises reasonably safe for them, and ordinary care in such circumstance can be exercised only by taking into consideration the propensities of the children who play there, the ability of such children to appreciate the danger, and their power to avoid it."

In the case at bar, the child was not a trespasser but was a lawful occupant of the premises on which the can of lye was located. While it is true that liability in a case such as this may be said to be closely akin to the underlying rule governing attractive nuisances, the gravamen of responsibility is nevertheless primarily founded upon article 2317 of the Civil Code, which declares that every one is liable for the damage caused by things we have in our custody. We find that the facts of the case at bar are strikingly similar to those in the case of Hunt et ux. v. Rundle, 10 La.App. 604, 120 So. 696, where liability was imposed against a plumber whose workmen stored gasoline under the plaintiffs' residence, when doing work on the premises, at a place where it was easily accessible to plaintiffs' children.

Inasmuch as we agree with the district judge that a can of lye is a dangerous article, particularly with respect to children of tender years (who are unable to appreciate its strong chemical qualities), it follows that, if the defendant Johnson permitted it to remain in an unguarded place, where he knew or should have known that it would be within reach of the children living in the apartment house, the liability of the defendants is certain. Corpus Juris, vol. 45, pp. 847 and 848, informs: "One who possesses a dangerous article must exercise diligence for the protection of those likely to be injured by a probable use of it, the requisite diligence being commensurate with the danger involved; hence, it has been sometimes said to demand great care, the utmost care, or exceptional precautions."

Applying this rule to the facts of the case, the conclusion is irresistible that Johnson was guilty of gross negligence, for he was well aware that the little Schultz boy played in and about the halls and yard of the apartment house. An examination of the can of lye, offered in evidence as being similar to the one discovered by the child, is sufficient to convince us that, because of its bright red, black, and yellow label, it would be intensely attractive to young children.

Being of the opinion that the defendants are liable, we finally consider the quantum of damages. Defendants maintain that the allowance of the district court is excessive, while plaintiffs assert that it is inadequate. The injuries to the child are described by Dr. Elson, plaintiffs' family physician, as follows:

"Third degree lye-burn of right cheek the size of silver half dollar with destruction of the skin and subcutanous thereof,

"Secondary swelling of the whole cheek involving the upper lip,

"First degree lye-burn of cornea and conjunctiva of right eye,

"Second degree lye-burn of upper and lower eyelids of right eye with swelling, blistering and glueing of the lids."

Immediately after the child was burned by the lye, he was taken to the Touro Infirmary, where first aid treatment was rendered. He was then placed under the care of Dr. Elson, who treated him for a period of about 6 weeks following the accident. This doctor says that the child suffered great pain; that for the first 22 days following the accident he had difficulty in prying the boy's eyelids open so that medicine could be put into the child's eye; and that he feared, at that time, that the eyelids of the right eye might grow together. He further asserts that, since the accident, the child has been extremely nervous and that, although he can close his right eye when awake, it remains partially open when he sleeps. While this doctor is of the opinion that the cornea of the eye will be damaged because the child sleeps with one eye partially open, he admits that he is not an eye specialist and, in view of the fact that two eye specialists have testified in the case, we prefer to rely upon their findings with respect to whether there has been an injury to the cornea of the child's eye.

Dr. F. Theo Beatrous, an eye specialist, produced by plaintiffs, examined the child shortly before the case was tried. He testified as follows:

"Q. All right, doctor, proceed with your report. A. Well, the examination at the office revealed the fact that the child had sustained some injury to the right side of the face at some previous date. This was evidenced by a cicatricular formation on the lower lid and right side of the face. Now, the child responded when I asked him to close the eye completely, and the lids were really closed together without much effort. In other words, there was no lagging of either lid; it was a complete closure of both lids."

The witness further stated that, when the child is asleep, his left eye is completely closed but his right eye remains open, exposing at least three-fourths of its cornea.

Photographs of the boy, which have been introduced in evidence, plainly exhibit that the child has suffered permanent scars on the upper and lower lids of his right eye. This conclusion is likewise concurred in by the medical testimony produced not only by plaintiffs but by the defendants. In truth, the only conflict presented in the testimony of the physicians is in respect to whether the child can or cannot close his eye while he sleeps. As stated above, Drs. Elson and Beatrous, as well as the mother of the child, testified that when the child sleeps his right eye remains partially open. On the other hand, defendants' doctors, Whitmire, an eye specialist, and Gessner, a surgeon, both examined the boy and found that while awake he is able to close his eye without special effort and they are unable to conceive why the child sleeps with his right eye partially open.

We accept the positive statements of plaintiffs' witnesses that the child does sleep with his right eye partially open but are convinced that this defect is not serious and will not injure his health.

In fixing the award to be allowed the plaintiffs, two factors should therefore be considered: (1) The pain and suffering endured by the little boy, and (2) the permanent scars which exhibit themselves on his upper and lower right eyelids. As to the size of these scars, the medical evidence is in dispute—one doctor stating that the scar on the lower eyelid is about one-quarter inch in diameter, whereas Dr. Elson asserted that it was about the size of a half dollar. These discrepancies are not very material, as we are able to judge the extent of the disfigurement by examination of the photographs of the boy, offered in evidence. There can be no doubt that these pictures reveal noticeable scars on the child's right eye; however, in our view, the scars are not comparable with the serious disfigurement of the young child in Balsamo v. Hall, 170 So. 402, 403, recently decided by us.

The plaintiffs place much reliance in the Balsamo Case as authority for their claim that the award should be increased. There, the plaintiff's 2 year old child was injured in an automobile accident. He was taken to the hospital, where he remained for a period of 10 days, and was then placed under the care of the family physician, who treated him for approximately 6 months thereafter. An operation had to be performed on the child's face, and the lacerations to his left eye were so severe that he is now unable to close it at any time. It was exceedingly difficult for us, in that matter, in view of the severity of the disfigurement, the age of the child and other circumstances, to determine what allowance should be made. An examination of the awards in cases involving scars and disfigurements afforded little help and prompted us to observe in that case that "none of them seems to do more than serve as a

very indistinct and indefinite guide." We finally concluded that, because of the boy's extreme suffering, we would allow him for it $1,000, and we fixed the sum of $2,000 as compensation for his permanent disfigurement.

We have already remarked that the injuries here are not nearly so serious as those in the Balsamo Case. It is always difficult to gauge with exactness the measure of damages and it would serve no purpose to set forth in detail the amounts allowed in cases involving scars and disfigurements, for each case must stand upon its own particular facts, and the authorities cannot be looked to as a definite precedent by which we can be guided. Careful consideration of the injuries received by the child in this case has convinced us that the award of our brother below in the sum of $1,000 is correct.

Counsel for the defendants tells us that, at all events, we should reduce the amount of the judgment of the district court because the defendant Johnson, the negro janitor, is a poor man. This point may not be considered because there was no evidence adduced at the trial respecting Johnson's poverty. Counsel has filed ex parte affidavits which reveal Johnson's lack of means, but these documents form no part of the record and we are without right to review them.

The judgment appealed from is therefore affirmed.

Affirmed.