Charles Koch, Minor, by Charles F. Koch, Sr., His Father and Next Friend, Appellee, v. City of Chicago, Co-Appellant, and Welsbach Traffic Signal Company, Appellant.

Gen. No. 40,039.

Heard in the third division of this court for the first district at the April term, 1938. Opinion filed October 26, 1938.

BARNET HODES, Corporation Counsel, for co-appellant; ALEXANDER J. RESA and L. LOUIS KARTON, Assistant Corporation Counsel, of counsel.

OTTO M. HAMER, of Chicago, for appellant; CHESTER D. KERN, of Chicago, of counsel.

GUY C. GUERINE, of Melrose Park, and ELMER W. ARCH, of Chicago, for appellee; GUY C. GUERINE, of counsel.

Mr. Justice Denis E. Sullivan delivered the opinion of the court.

This is an appeal from a judgment entered in the circuit court in favor of the plaintiff Charles Koch, a minor, for $10,000 and costs, and against both defendants, for personal injuries alleged to have been sustained by plaintiff on May 20, 1930, while playing near the base of a curb flasher traffic signal light in the city of Chicago. The cause was tried before a jury. The Welsbach Traffic Signal Company, defendant, brings this appeal and, by notice of appearance, the city of Chicago joins in said appeal.

Motions were made by defendants for judgment *non obstante veredicto,* for a new trial and in arrest of judgment, all of which were overruled.

The defendant city of Chicago raises no issue as to the pleadings, whilst the other defendant Welsbach Traffic Signal Company claims the cause of action was insufficiently stated in the complaint.

Plaintiff's theory of the case is that the defendant city of Chicago was primarily liable because of its failure to keep its streets, sidewalks and parkways in a reasonably safe condition; that the city of Chicago was liable because of its failure to keep the street lighting signal in a reasonably safe condition and repair; that both defendants are liable for maintaining an attractive nuisance and in neglecting to repair the flasher signal light and in permitting a caustic solution to remain exposed in the base of the signal post without being protected in any way.

Defendants' theory of the case on behalf of the City is that the existence of an attractive nuisance had not been proven as to plaintiff and that the evidence does not show any negligence on the part of the City.

The theory of the defendant Welsbach Traffic Signal Company, is that the complaint is an attempt to allege a tort based upon the violation of a contract to which plaintiff was not a party; that the City installed, pos-

sessed and maintained the signal light in a governmental capacity under the statute; that the primary duty of keeping it in repair was on, and remained that of the City; that said public duty was not and could not be delegated to the defendant Welsbach Traffic Signal Company under its contract to install and patrol and repair the signals.

The Welsbach Traffic Signal Company further contends that the plaintiff introduced no evidence to show that said company was chargeable with notice that the post had been broken or that it had violated its contract in any respect, or did anything other than install the type of signals according to the plans and specifications furnished by the City through the commissioners of public works; that the evidence shows that the signal light was located on a public street over which the City had sole control, and there was no evidence to show that this defendant had any authority to permit, entice, or invite children to play around the signal, and no evidence that it did so.

There does not seem to be any real dispute as to the actual facts.

The evidence tends to show that plaintiff at the time of the accident was a boy approximately 12 years of age, but was somewhat subnormal and played with children younger than himself; that the accident happened at the intersection of Mansfield avenue and Bloomingdale avenue in the city of Chicago; that Mansfield avenue was a dead-end street and east of it, the prairie had been used as a dumping ground and also as a playground and that part of the playground near the signal light post was free from rubbish and other materials; that there was a path leading from the street to the prairie which ran along side the signal light post.

The evidence further shows, according to plaintiff's witnesses, the signal light post had been knocked down approximately two weeks prior to the time of the acci-

dent and, according to defendants' witnesses the light post had been down for a period of 10 or 12 days.

The evidence further shows that children had been playing in the prairie and around the light post from the time the post was knocked down until the time of the accident and were seen around the broken post and curb daily; that two police officers lived in the same block as plaintiff and passed the light post every day.

The evidence further shows that defendants failed to remove said broken signal light post; that said signal light post had a cylindrical base which contained a cylindrical tube approximately 14 inches in diameter and which extended into the ground; that said base was filled with a dangerous and highly injurious caustic solution or liquid; that the light post when knocked down was thrown over its base, leaving exposed to the children playing at that point the cylinder and its contents; that two batteries were in said liquid; that the liquid was described as a caustic alkaline solution consisting of a mixture of carbonate of soda and sodium hydroxide.

The evidence further shows that this caustic or burning fluid when placed upon the flesh will eat into it; that plaintiff and another boy were playing around the base of the broken light post and, just before the accident, they were sitting on the lamp post which was lying on the ground and, in some way, the fluid was splashed out of the cylinder or base container which was open and exposed and some of the fluid went into plaintiff's eye; that plaintiff ran screaming from the place to his home; that something white was coming out of his eye and he was taken to a doctor who described his injuries as being caused by something that had been splashed into his eyes; that he was under the doctor's care for many months and operations were performed on his eyes, so that he now has vision of about 80 per cent in one eye and about 20 per cent vision in the other eye.

The evidence further shows from the testimony of several doctors that medical examinations disclosed that the plaintiff's left eye was red and bloodshot; that the white part of the eye was infected which had a tendency to cause plaintiff to keep blinking his eyes; that there was evidence of a growth in the eye, extending from the inner eyelid toward the pupil which growth had been removed several times; that there was a scar in the lower lid, extending between the eyeball and the lower lid; that there was stress and strain placed upon that scar; that he had difficulty in moving his left eye in all directions due to this scar; that plaintiff could not completely close the eye; that the scar tissue in the eye grew practically over the entire pupil and covered two-thirds of it; that the condition was caused through trauma and not the result of disease and that the constant irritation would tend to destroy what little sight remained.

The evidence further shows that another doctor who examined plaintiff on two occasions found that the left eye had two-tenths vision and the right eye had eight-tenths; that there was an impaired movement of the left eyeball and the doctor also found adhesions in plaintiff's eye, which were caused by inflammation, secondary to a cut or bruise; that the condition was caused through trauma.

Other doctors who testified for plaintiff and defendants agreed that such a caustic solution as was at the base of the light post, was the ''worst thing'' with which an eye could come in contact and that it could cause loss of sight.

The superintendent of the Welsbach Traffic Signal Company testified that the bases of the lights were filled with a caustic soda solution and that carbon forming the top of the cylinders in the base of the light is porous and crumbles.

The evidence further shows that this light post had been manufactured by the defendant Welsbach Traffic

Signal Company; that the terms of the contract between said company and the City, provided for the erection and maintenance, and they further agreed to patrol the lights and keep them in working condition and that they made an inspection once every two weeks; that a notice was served upon the city of Chicago on September 19, 1930, with reference to the accident, in compliance with the statute. The defendant Welsbach Traffic Signal Company claimed that they did not receive such notice and the evidence shows that they did not. Plaintiff claims the statute makes no provision other than that municipalities should receive a written notice.

It was not necessary that a notice be served upon the defendant Welsbach Traffic Signal Company before commencing suit. Chapter 70, par. 7, sec. 2, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 107.148], provides for the serving of notice on any incorporated city, village or town within six months from the date of injury. This requirement as set forth in the statute could not be extended to apply to codefendant corporations or individuals. Municipalities, such as the city of Chicago, are charged with the primary duty of keeping their streets, sidewalks and parkways in a reasonably safe condition. *Budek v. City of Chicago,* 279 Ill. App. 410; *Simon v. City of Chicago,* 279 Ill. App. 80. This is not a limited duty, but it extends to any part or portion of the streets, sidewalks or parkways or portions immediate and adjacent thereto. *Caruso v. City of Chicago,* 278 Ill. App. 247.

It is no defense on the part of a municipality to claim it is exempt from this obligation for the reason that it had delegated that duty to a contractor or third party. *Cole v. City of East St. Louis,* 158 Ill. App. 494; *Nichols v. City of Collinsville,* 165 Ill. App. 457. In the instant case the maintenance of said signal lights was purely ministerial, and negligence pertaining

thereto created a liability. *Blackaby v. City of Lewistown,* 265 Ill. App. 63; *Bedtke v. City of Chicago,* 240 Ill. App. 493.

It is contended by the defendant that the doctrine of an attractive nuisance does not apply. In this case the evidence shows that for a period of over two weeks a receptacle containing a caustic solution was permitted to remain close to a public highway in a part of the city occupied by residences, where children were known to congregate and play. In fact the end of the street was used as a public playground. A signal lighting pole had been broken down and was lying across the parkway. Just what caused the pole to have been broken does not appear in the evidence. Such an unusual condition of the light pole would naturally attract the attention of a child and, the youthful mind being naturally inquisitive, would cause the child to investigate such situation and would lead him into danger if, as in this case, the same existed. In passing on the facts the jury in our opinion was justified in finding this condition to be an attractive nuisance. *O'Donnell v. City of Chicago,* 289 Ill. App. 41; *Oglesby v. Metropolitan West Side El. Ry. Co.,* 219 Ill. App. 321; *Brownell v. Village of Antioch,* 215 Ill. App. 404.

As we view this case both defendants are liable on either theory that may be adopted:

1st. The negligence of the defendants in failing to maintain the streets and public places in a reasonably safe condition;

2nd. The maintenance of this unusual and attractive nuisance.

Either of these acts by the defendants was the proximate cause of the plaintiff's injury. The act of another child, in splashing the fluid into plaintiff's eyes, if such happened, was not such an independent or unrelated act as could excuse the defendants from their original negligence. *Seith v. Commonwealth Elec. Co.,* 241 Ill.

252; *Chicago Hair & Bristle Co. v. Mueller,* 203 Ill. 558; *Village of Carterville v. Cook,* 129 Ill. 152. These questions, however, were properly left to the jury to determine.

As to whether or not the City and the other defendant used proper care and for what length of time the dangerous condition existed before the defendants could be charged with notice and what degree of care defendants should use in dealing with a dangerous substance, were all questions for the jury to determine. *Decatur v. Besten,* 169 Ill. 340; *Mowery v. City of Mounds,* 245 Ill. App. 338; *McClure v. Hoopeston Gas & Elec. Co.,* 303 Ill. 89.

We think the objection made by one of the defendants to the pleadings, cannot be considered by this court as such objection was not made at the time of the trial. *Farmer v. Alton Bldg. & Loan Ass'n,* 294 Ill. App. 206; Civil Practice Act, Ill. Rev. Stat. 1937, ch. 110, subpar. 3, sec. 42 [Jones Ill. Stats. Ann. 104.042].

We do not believe prejudicial error was committed in permitting the admission of evidence particularly with relation to the testimony of the physician. As was said in *Kimbrough v. Chicago City Ry. Co.,* 272 Ill. 71 at page 78:

"In cases where there is no dispute as to the manner and cause of the injury and no dispute that there was an injury sustained by reason of the acts of which complaint is made, this court has held that a physician may then directly testify that a later malady was or was not caused by the accident or original injury, upon the same principle that he may testify that death resulted from a certain wound. (*Schlauder v. Chicago and Southern Traction Co.,* 253 Ill. 154; *City of Chicago v. Didier,* 227 id. 571.)"

Complaint is made that the damages are excessive. The evidence shows there was scar tissue or a growth in the eye extending from the inner eyelid toward the

pupil and that this tissue grew practically over the entire pupil, covering two-thirds of it and that this condition was caused through trauma and not the result of disease and that constant irritation would tend to destroy what little sight remained; that plaintiff had only two-tenths vision in the left eye and the right eye had eight-tenths; that the condition of the left eye would have a tendency to injure the right eye and that this condition would increase rather than decrease with the passage of time.

The fact that the boy was subnormal would make the loss of his eyesight an additional burden upon him in the battle of life. We think the verdict of the jury and the judgment of the circuit court should stand.

For the reasons herein given the judgment of the circuit court is affirmed.

*Judgment affirmed.*

HALL, P. J., and HEBEL, J., concur.