45 So.2d 642 (1950)
GENOVESE
v.
NEW ORLEANS PUBLIC SERVICE, Inc., et al.
No. 19384.
Court of Appeal of Louisiana, Orleans.
April 10, 1950.
*643 Herman and Herman, New Orleans, for plaintiff and appellant.
Alvin R. Christovich, Wm. W. Ogden, New Orleans, for New Orleans Public Service, Inc., defendant and appellee.
John May, John E. Hurley, New Orleans, for Boh Bros. Const. Co., and Travelers Ins. Co., defendants and appellees.
Deutsch, Kerrigan & Stiles and Breard Snellings, New Orleans, for Lang Co., defendant and appellee.
Rosen, Kammer, Wolff, Hopkins & Burke, New Orleans, for Clement Betpouey, Jr. & Co. and Maryland Casualty Co., defendants and appellees.
JANVIER, Judge.
Mrs. Dorothy Adams, divorced wife of George M. Daniels, and wife of Joseph Genovese, as tutrix of her five and one-half year old minor son, James Robert Daniels, brought this suit for damages on her own behalf, and for the use and benefit of her said minor son, against New Orleans Public Service, Inc., Boh Brothers Construction Company, Lang Company, and Clement Betpouey, Jr. & Company, and the liability insurers of the last three named defendants. She based her claim on the allegation that her son lost his eye as the result of being hit by a rail spike, thrown at him by another minor, Junior Cecil Prowell, age five.
The cause of action is based on the alleged fact that the various defendants (not including the insurers) were responsible for the presence of the rail spike which constituted an "attractive nuisance," and which, with numerous others, was left on one of the streets of New Orleans where the various defendants were engaged in removing tracks of New Orleans Public Service, Inc.
While Article 2317 of the Civil Code is not referred to in the petition, it is contended that the said defendants are liable not only because the spikes constituted attractive nuisances but also because of the mere fact that they owned or controlled the said spikes, it being argued that because of this, liability results since that article provides that: "We are responsible, not only for the damages occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. * * *"
It is charged that New Orleans Public Service, Inc. was making preparation for the substitution of busses to take the place of rail street cars on Jackson Avenue, and that it had entered into a contract with the firm of Boh Brothers Construction Company to remove the tracks and cross-ties, and that this defendant and the other contractors named were engaged in various phases of this work, including the re-surfacing of Jackson Avenue, the putting in of drainage, etc.
*644 It is especially alleged that large quantities of rail spikes were removed from the cross-ties, and that those spikes were not taken from the street and that some of them were being used by some of the contractors as stakes outlining the work which was being done on Jackson Avenue and on Rousseau Street which crosses Jackson Avenue. It is not alleged in detail just what particular part of this work each of the defendants was engaged in performing.
The negligence charged against the defendants is that they permitted these spikes to remain on the street where they might be played with by the young children of the neighborhood, in spite of the fact that to the knowledge of the various defendants, the spikes were inherently dangerous, and in spite of the fact that the defendants had been warned that the children were making use of them as toys, improvising javelins and spears which they threw at one another, and that they used them as hammers. It is alleged that the children were not of sufficient age to realize the danger of making such use of these spikes, and that on various occasions these dangerous practices were called to the attention of the agents or employees of the several contracting defendants.
It is especially charged that one of the children of the neighborhood, young Prowell, with one of these spikes struck petitioner's son in the right eye, so badly damaging it that it became necessary that it be removed.
All of the defendants filed exceptions of no right of action and no cause of action based on two grounds,(1) that there was no actionable negligence in leaving such spikes on the streets, for the reason that such spikes are not within the category of things inherently dangerous which may be called attractive nuisances, and (2) that the accident to plaintiff's son was not the proximate result of the fact that the spikes were left on the street, but was the direct result of an unforeseen and unforeseeable intervening act of a third person.
These exceptions were sustained and the suit was dismissed. Plaintiff has appealed.
We repeat that the contention of plaintiff is that the petition states a cause of action for either or both of two reasons (1) that, under the circumstances recited, the spikes constituted attractive nuisances, and (2) that in any event there is liability because of the effect of Article 2317 which, counsel for plaintiff contend, creates liability for damage caused by "the things which we have in our custody." The point sought to be made in this second contention is that the mere fact of ownership or control of an object, which causes damage, fixes liability for anything which may be caused by the use of the said object and this, regardless of whether the said object is inherently dangerous.
We find no force whatever in this second contention and shall eliminate it from further consideration by merely stating that obviously there can be no liability which results from mere ownership of a perfectly harmless object unless, for some peculiar reason of which the person who owns it or controls it should have knowledge, there is liability because of some peculiarly dangerous characteristic which is not understood by the person who may come into contact with it. As a matter of fact it is our thought that the doctrine of attractive nuisance is itself based on such a premise as that which is found in Article 2317, and surely there is no liability under the attractive nuisance doctrine when the object owned or controlled has not in it some quality which may make it dangerous if used in a particular way by some one who may not be familiar with it, or may not have sufficient intelligence to under stand the probable danger which may result if it is so used.
We conclude then that unless the doctrine of attractive nuisance is applicable to the facts alleged in the petition, there can be no liability in any or all of the defendants merely because of the allegation that any or all of them owned or had custody of the spikes.
Counsel for the various defendants argue that in Louisiana and in most, if not all other jurisdictions, it has been held almost universally that the attractive nuisance doctrine has no application unless the object, which is pointed to as the attractive nuisance, has a latent characteristic which constitutes *645 a hidden or not appreciated danger. They contend that the doctrine is only applied in such cases as that of an engine or a machine which may be set in motion by a child, a dynamite cap, gun powder, a turn table, poisons of various kinds, etc. They say that such objects as hammers, nails, spikes, baseball bats, pebbles and rocks have no hidden dangers and that no objects such as these can be characterized as attractive nuisances. Counsel seek to illustrate the distinction between those two groups of objects, one of which is represented by the hammer, the other by the dynamite cap. They say that if a child picks up a hammer and, with it, strikes another, there is no liability under the attractive nuisance doctrine, but if the child uses the hammer to strike a dynamite cap and, as a result of the resulting explosion, some one is injured, there may be liability under the doctrine, not because of the use of the hammer, which is not inherently dangerous and has no characteristics of an attractive nuisance, but because by the use of the hammer the dynamite cap was exploded, which dynamite cap obviously has hidden dangerous characteristics concerning which a young child certainly would have no knowledge.
Counsel for plaintiff counter with the contention that even if this may be ordinarily a sound argument, nevertheless there are other situations in which, by the doctrine of attractive nuisance, there may be created liability. They say that, if a perfectly harmless object is customarily used in a way which is dangerous to children and this use is, or ought to be known, there is liability in one who permits such objects to remain where children may obtain possession of them.
Counsel for defendant point to various text-writers and various cases as supporting the view that there can be no liability unless the object from which the danger results has inherently dangerous characteristics. They cite American Jurisprudence, Volume 38, Verbo Negligence, section 149, page 815:
"The character of the instrumentality by which the injury complained of was received is of great importance in determining liability under the attractive nuisance doctrine.

* * * * * *
"* * * The fact that a thing is attractive to children is not of itself a ground for invoking the attractive nuisance doctrine. Clearly, not everything which may possibly excite the curiosity of a child amounts to an attractive nuisance. If everything containing some element of danger to a boy, of which a plaything possibly can be made by him, amounts to an attractive nuisance, there is almost no limit to the application of the doctrine. * * * The tendency of the courts is to exclude from the application of the attractive nuisance doctrine things not in their nature dangerous or peculiarly alluring or attractive to children, natural conditions, common or ordinary objects such as walls, fences, and gates, simple tools and appliances, and conditions arising from the ordinary conduct of a business."
Counsel call attention to McKenna v. City of Shreveport, 16 La.App. 234, 133 So. 524, 526, in which the Court of Appeal, Second Circuit, held that ordinarily a pond is not to be classified as an attractive nuisance. There the Court said:
"* * * The doctrine does not apply to objects attractive and dangerous to children unless the danger be unknown, concealed, or hidden.
"* * * assuming the pond to be an ordinary one, we must further assume that the element of danger that did exist was not latent or unknown, but, on the contrary, was obvious * * *. The average child of the age of ten years, under the weight of authority, is chargeable with knowledge of the danger of drowning."
We are not certain ourselves whether a pond is or is not ordinarily to be considered in the category of "attractive nuisance", but our interpretation of expressions of our Supreme Court, to be found in Saxton v. Plum Orchards, Inc., 215 La. 378, 40 So.2d 791, 795, leads us to the belief that a pond is not to be considered as an attractive nuisance unless there is about it some characteristic, in addition to the mere *646 presence of water, which renders it unusually attractive and inherently dangerous. In that case the Supreme Court held a pond to be an attractive nuisance, but said that there were unusual characteristics about the particular pond, which was there involved, which made it most attractive and at the same time inherently dangerous. The Court quoted, apparently with approval, the following language from American Law Reports, Volume 36, page 224: "The weight of authority is to the effect that the attractive-nuisance doctrine does not apply to ponds,at least, where there is no unusual danger."
The Court then went on to show that there were unusual dangers in the pond then under consideration, saying: "* * * The instant pool, undoubtedly, was unusually attractive and alluring to children in view of its contents and location. In it was a large quantity of debris, consisting of small timbers, sticks and short pieces of boards,of the kind with which children enjoy playing, using them as boats. Additionally, it contained crayfish, minnows and frogs,marine life that invariably attracts childish interest. * * *"
As supporting the contention that the object must have a hidden or not understood danger in order that the doctrine of attractive nuisance should apply, counsel for defendant cite various other cases: Tomlinson v. Vicksburg, S. & P. R. Co., 143 La. 641, 79 So. 174; Latta v. Brooks, 293 Ky. 346, 169 S.W.2d 7; Peters v. Town of Ruston, La.App., 167 So. 491; Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255; 20 R.C.L. 93; Capps v. Carpenter, 129 Kan. 462, 283 P. 655; Davidson v. Sprague, 305 Ill.App. 157, 26 N.E.2d 736; Browne v. Rosenfield's, Inc., La.App., 42 So.2d 885; Emery v. Thompson, 347 Mo. 494, 148 S.W.2d 479; Martin v. Latex Construction Co., D.C., 50 F.Supp. 424; Brinkley Car Works & Mfg. Co. v. Cooper, 70 Ark. 331, 67 S.W. 752, 57 L.R.A. 724.
In the Tomlinson case children were playing on a pile of cross-ties. One of the ties became dislodged. One of the children was hurt. The Court held that such a pile of cross-ties did not constitute an attractive nuisance.
In the case of Latta v. Brooks, supra, the Supreme Court of Kentucky held that ordinary unslacked lime does not constitute an attractive nuisance, saying: "* * * It is practically harmless in its unslacked form, * * *. We think that we would be going far afield should we place ordinary, unslacked lime in the same category with turntables, engines, gunpowder, dynamite caps and gasoline tanks." [293 Ky. 346, 169 S.W.2d 9]
In Peters v. Town of Ruston, supra, the Court of Appeal for the Second Circuit said: "There are innumerable things and conditions ordinarily in existence which are both attractive and dangerous, and to hold that all of them constitute implied invitations for children to use and enjoy would be contrary to reason, and would require of property owners such vigilance and care as would depreciate the value of property and seriously handicap business. Accordingly, it is generally held that for the rule to be applicable, the condition or agency must be of an unusual nature and character so as to render it peculiarly attractive * * * to children." [167 So. 492]
In 20 R.C.L. 93, supra, appears the following: "Simple tools and appliances, as has been noted, embody no perils that are not obvious even to the mind of a young child, and consequently no recovery will be allowed as a rule for injuries sustained therefrom."
In Capps v. Carpenter, supra, the Court said:
"A boy's sword of lath can injure an eye, and innumerable toys, and house and garden and farm articles, utensils, and implements are capable of inflicting serious bodily injury. That does not make them dangerous instrumentalities. * * * and to call a chattel, not in its nature normally destructive and reasonably certain to imperil life or limb, a dangerous instrumentality because it may be misused, confuses the issue in negligence cases.
"* * * When probability of harm depends on the immaturity, incompetence, inexperience, recklessness, or ferociousness *647 of the person to whom a chattel is given for use, quite a different issue is presented. The person receiving the chattel is the dangerous agency." [129 Kan. 462, 283 P. 657]
In Browne v. Rosenfield's Inc., supra, the Court of Appeal for the First Circuit said: "The trial judge in his short written reasons for judgment disposed of the case by stating that because, in his opinion, an escalator was not per se a dangerous instrumentality, a plaintiff seeking to recover for an injury sustained while using one must not only allege but prove actionable negligence on the part of the defendant. We agree with him when he says that an escalator is not per se a dangerous instrumentality and as that seems to be also one of the elements required in order to invoke the doctrine as is pointed out in the quotation from American Jurisprudence, we agree with him that even under the allegations contained in the petition of the plaintiffs in this case, they have no cause of action." [42 So.2d 888]
In Emery v. Thompson, supra, the Supreme Court of Missouri refused to apply the attractive nuisance doctrine to a pile of railroad cross-ties, holding that that doctrine has no application unless the object is inherently dangerous. The Court said: "* * * `Inherently dangerous means that danger inheres in the instrumentality or condition itself, at all times, so as to require special precautions to be taken with regard to it to prevent injury; instead of danger arising from mere casual or collateral negligence of others with respect to it under particular circumstances.'" [347 Mo. 494, 148 S.W.2d 480]
See Hull v. Gillioz, 344 Mo. 1227, 130 S.W.2d 623.
Counsel for plaintiff, on the other hand, cite many cases in which the doctrine was applied, for instance, Schultz v. Kinabrew, La.App., 177 So. 450; Westerfield v. Levis Bros., 43 La.Ann. 63, 71, 9 So. 52; Lynch v. Nurdin, 1 Q.B. 29; Palermo v. Orleans Ice Mfg. Co., 130 La. 833, 58 So. 589, 40 L.R.A., N.S., 671; Southern Public Utilities Co. v. Thomas, 4 Cir., 78 F.2d 107; Hunt v. Rundle, 10 La.App. 604, 120 So. 696; Smolenski v. Cooke Asphalt Paving Co., 252 Mich. 517, 233 N.W. 400; Kelley v. Parker-Washington Co., 107 Mo.App. 490, 81 S.W. 631; Boylhart v. Di Marco & Reimann, 270 N.Y. 217, 200 N.E. 793; DeGroodt v. Skrbina, 111 Ohio St. 108, 144 N.E. 601, 38 A.L.R. 591; Sroka v. Halliday, 41 R.I. 322, 103 A. 799, L.R.A.1918E, 688; United States Natural Gas Co. v. Hicks, 134 Ky. 12, 119 S.W. 166, 23 L.R.A., N.S., 249, 135 Am.St.Rep. 407; Parnell v. Holland Furnace Co., 234 App.Div. 567, 256 N.Y.S. 323; New York Eskimo Pie Corp. v. Rataj, 3 Cir., 73 F.2d 184; Golden Saw Mill Co. v. Jourdan, 156 Miss. 813, 127 So. 287; Byrd v. Rector, 112 W.Va. 192, 163 S.E. 845, 81 A.L.R. 1213; Katz v. Helbing, 215 Cal. 449, 10 P.2d 1001; Koch v. City of Chicago, 297 Ill.App. 103, 17 N.E.2d 411; Brogan v. City of Philadelphia, 346 Pa. 208, 29 A.2d 671.
In Schultz v. Kinabrew, supra, the object which was complained of as an attractive nuisance was a can of lye which was left unguarded so that it might be played with by children. The Court said: "Lye is a very strong caustic and even when used by a person of age and experience must be handled with a great deal of care and caution. * * *" [177 So. 452]
In Westerfield v. Levis, supra, there was left unguarded on the street a street roller which was pulled by mules. The children climbed on it and started the mules. In Lynch v. Nurdin, supra, a cart was left unattended on the street and a child climbed upon it and started the horse. In Palermo v. Orleans Ice Mfg. Co., supra, the defendant allowed hot water and steam to flow into the gutter where it was attractive to children who obviously could not appreciate the danger. In Southern Public Utilities Co. v. Thomas, supra, a child not quite five years old, took some gasoline, which had been left in a can on the front porch of his home by workmen, and poured it into his mother's kitchen stove, saying that he wanted to "make mama's fire burn better." The Court referred to gasoline as "a volatile liquid, highly inflammable when contact with fire is established." [78 F.2d 108.] In Hunt v. Rundle, supra, an employee of the defendant left gasoline in a can where it was easily accessible to children. In Smolenski *648 v. Cooke Asphalt Paving Co., supra, the objects were small cars which had no brakes and which, when not in use, were ordinarily chained to the track. The defendant's employees left the cars unfastened where children might play upon them. One of these cars was started by other children and a minor was injured. In Kelley v. Parker-Washington Co., supra, the object in question was a road grader to which there was attached a pan which fell as the result of merely pushing a lever. A little girl climbed on the grader with her younger brother who pushed the lever and released the pan with resulting injuries to the little girl. In Boylhart v. Di Marco & Reimann, supra, steel beams were piled on the street in such a way that if climbed on some of the top ones might fall. Children were playing "follow the leader". One of them climbed on top of the pile of beams and a young child was hurt when one of them fell. In DeGroodt v. Skrbina, supra, a dump wagon, left unsecured, was set in motion by children who played with it. In Sroka v. Halliday, supra, there was involved an unexploded aerial bomb which exploded when set off by a match by a seven year old boy. In United States Natural Gas Co. v. Hicks, supra, there was a defective gate valve in a pipe line which permitted large quantities of gas to escape into a box covering the pipe line. An eight year old boy was playing marbles and one of them went into a crack in this box. Another young boy, in an attempt to find the marble, lighted some tar paper and held it in the box with a resulting explosion. In Parnell v. Holland Furnace Co., supra, the defendant left a dismantled automobile standing in an open yard and in it an exposed gasoline tank with gasoline in it where it might be played with by children. In New York Eskimo Pie Corp. v. Rataj, supra, there was involved "dry ice" which is solidified carbon dioxide with a temperature of 110 degrees below zero. A young child placed some of it in a bottle which was partially filled with water. There was an explosion, with resulting injury. In Golden Saw Mill Co. v. Jourdan, supra, the object which it was contended was an attractive nuisance was a mixture of ingredients, including coal tar, creosote and gasoline, which created a gas in a drum which exploded when it was played with by children who lighted a match. In Byrd v. Rector, supra, the object was a dynamite cap. In Katz v. Helbing, supra, the contractors left caustic lime available to children who did not know, of course, of the dangers of playing with it. In Koch v. City of Chicago, supra, a mixture of caustic soda was involved.
It thus appears from a study of every case relied upon by plaintiff that in not one of them was the object which caused the injury free of inherent danger. Attached to each there was a latent danger which could not be understood by an irresponsible minor. In every one of them there was something about the object which was dangerous to any one not familiar with its characteristics and which could not be appreciated and understood by a young child.
We find ourselves unable to attach to a railroad spike any of the characteristics which we have found in each of the cases cited on behalf of the plaintiff. To hold that merely leaving such harmless objects where they may be found and played with by children, a contractor or an owner of such objects would make himself liable for injuries sustained by a child is to extend the doctrine of attractive nuisance beyond reasonable limits.
Nor does the fact that certain employees were told that children were playing with these spikes alter the situation. If an object is harmless and does not constitute an attractive nuisance, we do not see that the fact that the owner, or the person having it in his custody, is told that children are playing with it makes it inherently dangerous, if it did not already possess dangerous characteristics not readily understood. Children are wont to play with sticks and stones and to play games with them. Suppose a contractor is building a house and children make javelins out of scrap lumber and injure one another (Capps v. Carpenter, supra) surely there would be no liability under the attractive nuisance doctrine. The mere fact that children were tying these spikes to the ends of sticks did not give them a dangerous characteristic which could not be understood by children.
*649 The Supreme Court, in Saxton v. Plum Orchards, Inc., supra, quoted from page 1263, Volume 152 of the American Law Reports, certain tests to be applied in determining whether the attractive nuisance doctrine is applicable to any particular situation. It was said that in order to make out a case under that doctrine the following must appear:
"1. That the injured child was too young to understand and avoid the danger.
"2. That there was reason to anticipate the presence of such children, either because of some attraction on the premises, or because the danger was in some place where children had a right to be.
"3. That there was a strong likelihood of accident.
"4. That the danger was one other than those ordinarily encountered.
"5. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances." [215 La. 378, 40 So.2d 795]
So far as test No. 1 is concerned, we do not see that the children involved here were too young to understand and avoid the danger of hitting each other with spikes, since there was nothing about the spikes which even the youngest child could not understand. There was no mechanical contrivance which might be set in motion. The spikes were merely inert objects no more calculated to cause damage than any other pieces of metal or stones or tools which might have been scattered about.
The second requirement was met in that there was reason to anticipate the presence of children.
We do not think that the third requirement was met for the reason which we have already said; we do not see that there was any strong likelihood of an accident. Nor was the fourth requirement met since the danger was not one other than those ordinarily encountered. There was nothing particularly dangerous about the presence of railroad spikes. Nor was the fifth requirement met since we do not see that any reasonably prudent person would have done any more than was done by those who were in charge of the railroad spikes.
Our conclusion is that the attractive nuisance doctrine has no application to the facts alleged in the petition and accordingly that the defendants would not be liable even if all of the allegations of the petition were shown to be true.
Believing then, as we do, that there was no actionable negligence in any of the contractor-defendants in permitting the spikes to remain on the streets, it becomes unnecessary that we consider the other very interesting question of whether the proximate cause of the unfortunate accident was the presence of the spikes. Nor need we consider the very interesting special defense of New Orleans Public Service Inc., which is based on the allegations of the petition that that corporation was not itself engaged in doing the work and had let the contract to an independent contractor. Nor need we consider the other special defense of the Lang Corporation or the Betpouey corporation that, from the allegations of the petition, it is a necessary conclusion that neither of those defendants had anything to do with the removal of the rails, or the leaving of the spikes upon the streets.
For the reasons assigned, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.