No. 3104

Second Circuit

(Second Division)

McKENNA v. CITY OF SHREVEPORT ET AL.

(April 9, 1931. Opinion and Decree.)

Dickson & Denny, of Shreveport, attorneys for plaintiff, appellant.

Aubrey M. Pyburn, of Shreveport, attorney for City of Shreveport, defendant, appellee.

Blanchard, Goldstein & Walker, of Shreveport, attorneys for Flenniken Construction Company, defendant, appellee.

Clifton Davis, of Shreveport, attorney for C. A. Kuhn, defendant, appellee.

STEPHENS, J. The plaintiff has brought this action against the city of Shreveport, Flenniken Construction Company, Inc., Mrs. Fannie Goode Maguire, R. P. Moore, P. D. Voisin, and Charles Anthony Kuhn, to recover damages in the sum of $16,439 for the death of her minor son.

The facts as alleged in the petition which are pertinent to the discussion about to follow are: That shortly before the 12th of March, 1926, Gilbert street, in the city of Shreveport, was graded and filled, the actual work being done by Flenniken Construction Company, Inc., under a contract with the city of Shreveport; that the fill was so constructed as to form a dam at a point where there was a depression on the west side of Gilbert street, between that street and Wichita street, and that, the drain under the street graded being insufficient in size to carry off water as it accumulated, a pond of water was formed some eight or ten feet in depth and of considerable width; that the pond was attractive to the children of the neighborhood, who constructed a raft of boards and logs in order to play upon the water; that on March 12, 1926, plaintiff's son, then ten years of age, while playing upon the raft, fell into the pond and was drowned.

The plaintiff further alleged that she had no knowledge that her son was playing on the pond, and that she was free from negligence in the premises; and that all of the defendants, including the four last named above, upon whose property the pond was formed, knew that children of the neighborhood were attracted to the pond, and that said pond was dangerous; that nothing in the way of draining or filling said property was done in order to correct the dangerous situation, which negligence on the part of defendants rendered them responsible to plaintiff for the death of her minor son.

Exceptions of no cause or right of action were filed on behalf of all defendants. The common ground upon which all of the exceptions were founded is that the petition fails to state a cause of action under the "attractive nuisance" doctrine.

In addition thereto, the city of Shreveport urges, as a reason for sustaining the exception of no cause of action as to it, that a municipality is not responsible for damages resulting from the exercise of a governmental function; and, further, that there is no specific allegation of negligence charged in the petition to the city of Shreveport or any of its agents.

The Flenniken Construction Company takes the further position, for reason why the exception of no cause of action should be sustained as to it, that there is no specific act of negligence charged by the petition against the Flenniken Construction Company; it not being alleged that the company, as the contractor, did anything which it should not have done, or failed to do anything which it should have done

in the proper performance of the work of filling and grading; and that as a municipality is not responsible for the damages resulting from the exercise of a governmental function, the contractor, acting for the city, when guilty of no collateral negligence in the execution of the work delegated to it, is likewise free from responsibility.

The four last named defendants urge, in addition to their position that the "attractive nuisance" doctrine has no application to the present case, that there is no legally sufficient allegation of negligence charged against them by plaintiff's petition to render them liable in damages.

The exceptions of no cause of action were sustained by the district court, and plaintiff's suit was dismissed, from which said judgment she appeals.

This action is squarely founded on the doctrine of attractive dangers to children. It is our opinion, after a careful study of the jurisprudence, that the pond in question, considered in connection with the age of the child, was not an attractive danger to children within the meaning of the doctrine. It would therefore be futile to discuss the causes, be they negligent or intentional, which created the pond, or those which permitted its continued existence until the tragedy occurred.

That a pond is both attractive and dangerous to children must be conceded. That a pond is particularly attractive to boys is judicially recognized in Sullivan v. Huidekoper, 27 App. D. C. 154, 5 L. R. A. .(N. S.) 263, 7 Ann. Cas. 196, as follows:

"Every man who has been brought up with the freedom allowed to American boys knows that you might as well try to dam the Nile with bulrushes as to keep boys away from ponds, pools, and other bodies of water."

The weight of authority, however, is that the turntable or "attractive nuisance" doctrine does not apply to a pond unless there is some unusual condition or artificial feature other than the mere water and its location, rendering the place peculiarly dangerous to children. The doctrine does not apply to objects attractive and dangerous to children unless the danger be unknown, concealed, or hidden.

The plaintiff has not alleged in the present case that the pond had any unusual features rendering it peculiarly dangerous to children. Therefore, assuming the pond to be an ordinary one, we must further assume that the element of danger that did exist was not latent or unknown, but, on the contrary, was obvious. And as the plaintiff has not alleged that the child was of inferior intellect, we must assume that he possessed the mental faculties usually found in a child of the age of ten. The average child of the age of ten years, under the weight of authority, is chargeable with knowledge of the danger of drowning.

The authorities upon the subject of ponds, etc., as attractive dangers to children are collated and extensively discussed in paragraph 231, page 224, 36 A. L. R., and in 20 R. C. L., pp. 86 and 96.

The following are fairly illustrative of the numerous decisions on the subject:

20 R. C. L., sec. 76, p. 86:

"In any situation it is the defendant's superior knowledge of the peril that furnishes the ground for recovery. And so here; if it appears that the injury complained of was produced by a peril of an obvious or patent character a recovery should be denied. The turntable doctrine, it has been said, should be limited in its application to 'cases where the danger is latent.' Examples of dangers that are apparent even to young children are found in the elements of fire and steam."

20 R. C. L., sec. 85, p. 96:

"Ponds, pools, lakes, streams, and other waters embody perils that are deemed to be obvious to children of the tenderest years; and as a general proposition no liability attaches to the proprietor by reason of death resulting therefrom to children who have come upon the land to bathe, skate, or play. In a recent case the court said: 'That a pond of water is attractive to boys for the purposes of play, swimming, and fishing, no one will deny. But its being an attractive agency is not sufficient to subject the owner to liability.' It must be an agency such as is likely, or will probably, result in injury to those attracted to it. That many boys, every year lose their lives by drowning is a matter of common knowledge. But the number of deaths in comparison to the total number of boys that visit ponds, lakes, or streams for purposes of play, swimming and fishing is comparatively small. It would be extending the doctrine too far to hold that a pond of water is an attractive nuisance, and therefore comes within the turntable cases.' "

In Sullivan v. Huidekoper (1906) 27 App. D. C. 154, 5 L. R. A. (N. S.) 263, 7 Ann. Cas. 196, it was held that the attractive nuisance doctrine was not applicable to render liable the owner of a parcel of land in a city upon which the construction of a street had caused a pond to form, in which children were accustomed to play, for the drowning of a ten year old boy therein, although no effort had been made by the owner to drain off the water, or to fill in the depression, or to fence in the pond, on the ground that the element of an unknown, concealed, or hidden danger was absent, that the likelihood of accident was small, and the difficulty of guarding against it great. The court said:

"The danger of children who go to swim in ponds and other bodies of water is remote, and accidents are comparatively of rare occurrence. To hold an owner of real estate, upon which there is a body of water, liable for the accidents that may happen to children while trespassing thereon, would be to place upon them an unfair burden. The danger is one that cannot be guarded against without considerable expense or inconvenience. The cases holding that there is no duty upon the part of a real-estate owner, upon whose land is a pond or other body of water, to keep his land safe for trespassers, even when those trespassers are children, seem to us to be founded upon and supported by reason and common sense."

The plaintiff has not alleged a cause of action. It is therefore ordered that the judgment appealed from be affirmed, with costs.