[1] Plaintiffs, the father and mother of a four year old daughter, who was drowned in a pond on land owned by the defendant corporation, brought this suit for damages for the loss of their daughter, charging that it was negligence for the said corporation to allow the pond to remain in close proximity to the residence of plaintiffs since it was of such a nature that it was attractive to children and thus constituted a peril to all young persons who, by its attractiveness, might be lured into the danger which always results when very young persons play in or near such bodies of water. In other words, the cause of action, if there is one, is based on what is familiarly known as the doctrine of the "turntable cases," Sioux City P. R. Co. v. Stout., 17 Wall. 657, 21 L.Ed. 745, which doctrine is founded on the theory that it is negligence to maintain in any place where children "have a right and are likely to be" anything which is dangerous to such children, if it is of such a nature as to be attractive to them to such an extent "that the instincts of children would prompt them to meddle, or play with or in it." Fincher v. Chicago, Rock Island Pacific Railway Company, 143 La. 164, 78 So. 433, 434. *Page 424 
In their original petition plaintiffs alleged that they had leased the house in which they lived from the defendant corporation which was the developer of the subdivision in which the said house was located, and that the said defendant corporation, in developing the subdivision, had caused to be dug the pond in which their daughter was later drowned, and that the said pond was located about one hundred and fifty feet from their said residence.
To this petition defendant filed an exception of vagueness apparently based on the theory that the pond was not sufficiently described to permit of a determination of the question of whether it was or was not of such a nature as to constitute an "attractive nuisance."
When the exception of vagueness was filed plaintiffs filed a supplemental petition in which they alleged that the pond was about one hundred and eighty-eight feet in length, twenty-one to twenty-nine feet wide, from five to nine feet deep and that "floating thereon were a great many pieces of old logs, wood, board, timber and debris which to a child of the tender age of petitioners child would or may give the impression that the place, ditch, large hole or excavation was filled particularly when the wind would blow that which was floating on the water into one portion or corner all to the defendants knowledge." They further alleged that "the body of your petitioners' child was found among that which was floating on the water. Petitioners' child of tender age evidently believed she could walk where she was drowned."
When this supplemental petition was filed defendant filed an exception of no cause of action contending that the mere maintenance of such a pond does not, in itself, constitute negligence, and that such a body of water cannot be characterized as an attractive nuisance, unless it is alleged and proven that there is something unusual about it which would cause children to be attracted to it.
This exception was referred to the merits and defendant filed an answer admitting the ownership and maintenance of the pond and admitting that it had leased to plaintiffs the house in which they lived. Defendant, after denying that the death of the little girl had resulted from any negligence on its part, averred that the plaintiffs knew of the existence of the pond, and that the said death was caused by the failure of plaintiffs to properly attend and guard their minor child, that such act on the part of the plaintiffs should be a bar to their recovery.
There was judgment below dismissing the suit and plaintiffs have appealed.
The facts, except in one particular, are not in dispute. The house in which the plaintiffs lived belonged to the defendant corporation and had been leased by it to plaintiffs, and the pond in which the little girl was drowned was on land belonging to defendant and defendant had caused it to be dug to assist in the drainage of that particular part of the property and for the further purpose of providing earth which was used in filling other low portions of the subdivision. The pond was in the rear of the house which was across the street from that in which plaintiffs lived and, at its nearest point, was approximately one hundred and fifty feet from the residence of plaintiffs. It was about one hundred and seventy-five to two hundred feet in length, had an extreme width of twenty-one to thirty feet and a depth of from four to eight or nine feet.
The only dispute over the facts arises from the contention of plaintiffs that floating in the pond were large pieces of timber which, according to plaintiffs, had the effect of leading children to believe that they might be used as rafts, and which also had the effect, so plaintiffs say, of constituting a trap leading children to believe that they might step on them with safety.
The evidence as to the presence of these pieces of timber or logs is conflicting, but we think there is a substantial preponderance in favor of the contention of the defendant that in the pond there was only the usual debris consisting of small pieces of wood, branches, etc., and that there was nothing therein to lead children to believe that it could be used as a raft or which so disguised the surface of the pond as to lead children to believe that it could be walked upon. *Page 425 
The record shows that in the pond there were crayfish, frogs and minnows and these, of course, are to some extent attractive to children.
[2] We are convinced that the parents of the little girl should not be charged with negligence in failing to properly keep watch over her, and that they did all that parents, in their circumstances, could reasonably be expected to do to protect her from harm and to prevent her from wandering into danger.
There were three other young children in the family and the financial circumstances of the parents were such that they could not afford to employ a domestic servant to keep constant watch over these four little girls. Mrs. Saxton found it necessary to do most of her own household work and, of course, there were often occasions on which the children played in the neighborhood without adult supervision.
In the house immediately across the street from that of plaintiffs, and directly in front of the pond in question, lived the Gonsoulin family in which there were ten children, and it was not surprising that these groups of children should often play together and should wander back and forth between the two houses. In spite of this, the evidence convinces us that Mrs. Saxton did all that she could to keep her children from going near the pond, and that even when the little girl, who was later drowned, was sent to a neighborhood store, it was customary for her mother to stand where she could watch her going to and coming from this store.
On the day of the unfortunate accident Mrs. Saxton had gone into the house to prepare a meal and only a few minutes later called to the children to come into the house. It was then discovered that this little girl was not with the others and a search immediately was begun which, after about two hours, resulted in the finding of the little girl in the pond. No fault can be attributed to the parents.
The question then is simply this: Is a pond, situated within one hundred and fifty to two hundred feet of a residence in which children live, and about which there is nothing unusually attractive, such as a raft or a boat, such an attractive nuisance as to render the owner thereof liable for the death of a child who wanders into it and is drowned?
Plaintiffs rely to a considerable extent on what our Supreme Court said in Fincher v. Chicago, Rock Island Pacific Railway Company, supra. There, a four year old daughter of the plaintiff wandered into a pond which the defendant railroad company had allowed to be created by drainage water dripping from the end of a culvert on its right-of-way. It appears that there was nothing about this pond or pool which made it any more attractive to young children than any pond always is. The Supreme Court held that the defendant company was not liable, but counsel for plaintiffs say that the language used by the Court, in reaching this conclusion, shows that the Court felt that there was no liability only because that particular pond was so located that it could be seen only by persons who had already trespassed upon the right-of-way of the railroad, and that the court indicated, so counsel say, that it would have reached the opposite conclusion had the pool been in a place in which it could have been seen by persons who might not have already trespassed or wandered into a place to which they should not have gone.
It is true that the wording of the opinion creates the impression that had the pool been visible the defendant might have been held liable, for the Court, in referring to the pool, said that "it was on the other side of the railroad tracks, and down an embankment, not within sight from the street, nor until the first track of the railroad had been crossed." The court added that the pool was "not accessible, or even visible, therefore, to children except by going upon the railroad tracks, a place certainly where children had absolutely no right to be * * *."
Defendant asserts that the proper rule is that which was applied in McKenna v. City of Shreveport et al., 16 La. App. 234, 133 So. 524, 525, 526, wherein our Brothers of the Second Circuit, said:
"The weight of authority, however, is that the turntable or 'attractive nuisance' *Page 426 
doctrine does not apply to a pond unless there is some unusual condition or artificial feature other than the mere water and its location, rendering the place peculiarly dangerous to children."
In that case the Court quoted the following from Sullivan v. Huidekoper, 1906, 27 App.D.C. 154, 5 L.R.A., N.S., 263, 7 Ann. Cas. 196:
"To hold an owner of real estate, upon which there is a body of water, liable for the accidents that may happen to children while trespassing thereon, would be to place upon them an unfair burden. The danger is one that cannot be guarded against without considerable expense or inconvenience. The cases holding that there is no duty upon the part of a real-estate owner, upon whose land is a pond or other body of water, to keep his land safe for trespassers, even when those trespassers are children, seem to us to be founded upon and supported by reason and common sense."
[3] We are also favorably impressed by what was said by the Court of Appeal for the Second Circuit in Peters v. Town of Ruston, La. App., 167 So. 491, 492, in which that Court discussed at length the doctrine of "attractive nuisance," giving the reasons for the application of the doctrine in certain situations, and also giving the following most excellent reasons for refusing to apply it in certain other cases in which the things complained of were, nevertheless, undoubtedly attractive to young persons. There the Court said:
"While the thing or condition must be both attractive and dangerous to children, it cannot be correctly said that all dangerous agencies and conditions which attract children amount in law to attractive nuisances. There are innumerable things and conditions ordinarily in existence which are both attractive and dangerous, and to hold that all of them constitute implied invitations for children to use and enjoy would be contrary to reason, and would require of property owners such vigilance and care as would depreciate the value of property and seriously handicap business. Accordingly, it is generally held that for the rule to be applicable, the condition or agency must be of an unusual nature and character so as to render it peculiarly attractive and alluring to children."
While it is true, that in that case the children who were drowned were thirteen and sixteen years of age respectively, and, therefore, the Court referred to the fact that "the doctrine is applied only in cases where children are too young to understand and appreciate danger," we feel certain that the ratio decedendi of that case was the Court's realization of the fact that a pond, though attractive to young children, is not of itself to be classified as an attractive nuisance unless there is about it something unusual, such as a raft or a boat, or unless it is so constructed as to constitute a trap.
[4] Innumberal cases have arisen and the text writers and other authorities, who have referred to all of them, have reached the conclusion that the overwhelming weight of authority supports the contention of defendant that no liability results from the mere ownership or maintenance of a pool, unless there is about it something which makes it unusually alluring, something which affords more attraction than that which is produced by the mere existence of a pool, or unless it is so constructed that it constitutes a trap by the hidden danger of which someone is brought into contact with an unseen or unappreciated peril.
To hold otherwise would be to condemn as attractive nuisances the innumerable pools, ponds, drainage canals, ditches and other waterways of various kinds which are so necessary both in the City and in the Country, and which contribute to the convenience, comfort and happiness of all of our citizens everywhere.
[5] As we have already said, there was nothing unusually attractive about this pond. It was not so constructed as to constitute a trap and no culpable negligence is chargeable to defendant for maintaining it.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed. *Page 427