This is a tort action in which plaintiffs, husband and wife, seek the recovery of damages for the death of their sixteen-month old son who was accidentally drowned in a pool of water located on property belonging to defendant.
An exception of no cause and no right of action was filed on behalf of defendant, which was maintained by the District Judge, pursuant to which ruling plaintiffs' suit was dismissed. From the judgment plaintiffs bring this appeal.
Unfortunately, we do not find it practicable to discuss the issues raised by quoting extracts from plaintiffs' petition inasmuch as the consideration of almost every paragraph of the document is essential to a determination of the matter. For this reason we find it necessary and desirable to quote the entire petition as follows:
"The petition of Mack Watts and Emma Lishman Watts, residents of Natchez, Mississippi, with respect, represents: —
 (1)
"That George Murray, a resident of the Parish of Concordia, State of Louisiana, *Page 304 
is justly and truly indebted unto your petitioners in the full sum of Ten Thousand ($10,000.00) Dollars, together with legal interest from date of judicial demand until paid, for this, to-wit:
 (2)
"That George Murray, on December 3, 1946, was and is now the owner of the Vidalia Plantation located in the Parish of Concordia, State of Louisiana; that at that time Sam Williams, a negro, was employed by defendant, by the week, and was furnished by George Murray with a house located on Vidalia Plantation, which house was also occupied by Sam Williams' daughter, Rosalie Huing; that there is a large yard around thehouse and in the northwest corner thereof there is a cementvat, built flush to the ground, being about eighteen feet long,three feet wide, and four feet deep, with a graded walk intosame from the south end of the vat and in which at all timeswater collected, filling same and forming a pond.
 (3)
"That there is a gravel road which runs east and west from the public highway down to the property line of the Vidalia Plantation and which ends just at the edge of the above described yard surrounding the house occupied by Sam Williams;that along this gravel road are several houses occupied bywhite and colored families; that plaintiffs and their family lived in the last house on the south side at the east end of this road, (said house hereinafter referred to as the Watts house), the Watts family having moved there on or about June 1, 1946, and which was occupied by them on December 3, 1946, and until some time in 1947, when they moved to Natchez, Mississippi; that plaintiffs had three children, namely: Patsy Ruth, born July 31, 1938; Johnnie Mack, born November 9, 1943, and Jimmy Lee, born July 23, 1945; all of whom were living in the Watts house.
 (4)
"That plaintiffs, after they moved into the Watts house,became very friendly with Rosalie Huing and Sam Williams; that Sam Williams had a garden and raised chickens and plaintiffswould go over to their house to buy vegetables and eggs fromthem regularly; that Rosa Huing and Sam Williams became veryfriendly with the Watts' three children, and particularly Johnny Mack Watts, who spent a lot of time with Rosalie,sitting on her porch and playing around her house and in heryard; that the youngest child, Jimmie Lee, would be taken by his parents over to Sam Williams' house when the Watts went over to buy vegetables and eggs; that this friendly relationship existed the entire time that the plaintiffs lived in the nearby Watts house.
 (5)
"That on these frequent visits to Sam Williams' house onVidalia Plantation plaintiffs would use a path running from theend of the gravel road to the front of the Williams' house;that this path passed within about ten feet of the south end ofthe above described pond of water located thereon, which pond was in plain view of anyone using said path; that on the numerous occasions when plaintiffs would take Jimmie Lee Watts with them over to Sam Williams' house, using said path, Jimmie Lee could see and did see the said pond of water, which attracted him thereto.
 (6)
"That on the day of December 3, 1946, at or about 1:00 P.M., o'clock, Emma Lishman Watts was in her kitchen preparing dinner and Jimmie Lee Watts was playing in the yard by the kitchen window in sight of his mother; that unknown to his mother Jimmie Lee left the vicinity of the kitchen window, and went out to the front yard of the Watts' house to play, wading in the water in a shallow ditch along the gravel road hereinabove described.
 (7)
"That very shortly thereafter, Mrs. Watts heard Jimmie Lee scream and not seeing Jimmie Lee in the yard by the kitchen window she ran out to the front yard in search of him, asking Neal Taylor, a negro living in front of the Watts' house, to help find the child; that Neal Taylor *Page 305 
began to look for the child and finally walked over to the pond of water and saw the small foot prints of the child on the graded walk leading into the pond of water and noticed that the water therein had been disturbed; realizing that Jimmie Lee had walked into the pond of water, Taylor ran to the Williams' house, got a hoe, returned to the pond of water and removed the child therefrom; that the child was dead, having drowned in the said pond of water.
 (8)
"That this terrible accident was due to the gross negligenceof the defendant in maintaining a pond of water with a cementgraded walk into it on his property, which constituted anattractive nuisance; that defendant knew or should have knownthat such a pond of water of this nature, particularly one witha graded walk into it, would attract children in the vicinityto play therein; that said defendant is guilty of grossnegligence in failing to observe and guard against such alikely danger, and in failing to remove such a dangerous instrument from his premises.
 (9)
"That some time prior to this fatal accident hereinabove described, a calf had drowned in this same pond of water and defendant had knowledge thereof but took no action whatsoever to have the said pond removed from his premises, nor did hetake any action to guard against a similar happening, such asthe one herein set forth.
 (10)
"That defendant knew, or should have known, that childrenwere accustomed to using the path running within ten feet ofsaid pond of water and that such a pond of water would attract their attention and be alluring to them and would constitute a dangerous nuisance and be a dangerous instrumentality if maintained without taking any precautions to protect the said children, who passed close thereto on said path, to the certainknowledge of said defendant and with his acquiesence; that defendant is charged with knowing or, from the circumstances here present, he reasonably should have known, of the presence of irresponsible young children at the location of this dangerous and attractive pond of water maintained by him on his premises.
 (11)
"That this particular pond of water that defendant maintained on his premises was a dangerous instrumentality — something in the nature of a trap; that it was built with a graded cement walk into it so that a child having been attracted to the dangerous instrumentality would begin to play in the pond and wade out into it, gradually being lured into the water until it reached a depth over his head, just as the deceased child, Jimmie Lee Watts, actually did, as herein set out.
 (12)
"That because of his gross negligence in maintaining this said attractive nuisance described above, by which Jimmie Lee Watts met his death, the said defendant is indebted unto your plaintiffs for the loss of the said child, in the full amount of Ten Thousand ($10,000.00) Dollars.
 (13)
"That amicable demand for the payment of said Ten Thousand ($10,000.00) Dollars has been made upon defendant, but to no avail.
"Wherefore, plaintiffs pray for service and citation in accordance with law, and, for judgment in favor of plaintiffs, Mack Watts and Emma Lishman Watts, and against defendant, George Murray, in the amount of Ten Thousand Dollars, together with legal interest thereon from date of judicial demand until paid, for costs and all and general relief." (Emphasis by the Court.)
On only a casual reading of plaintiffs' pleading it is at once apparent that this matter involves the application of the familiar but still somewhat uncertain and much disputed principles of the so-called "attractive nuisance" doctrine.
Careful consideration of the able opinion of our learned brother of the District Court discloses the obvious fact that he relied on a case which was in all respects, as to the facts and the law applicable, very similar to the one here presented by *Page 306 
plaintiffs' petition, namely, Saxton et ux. v. Plum Orchards, Inc., La. App., 34 So.2d 423. The cited case was decided by our brethren of the Orleans Court who gave judgment for defendant, dismissing plaintiff's suit. However, writs were granted by the Supreme Court and on April 25, 1949, the Supreme Court rendered judgment reversing the judgments of the District Court and the Orleans Court of Appeal and rendered judgment in favor of plaintiffs; Saxton et ux. v. Plum Orchards, Inc., 215 La. 378,40 So.2d 791.
The principal contentions urged on behalf of defendant in the instant case, on the basis of the acceptance of facts as alleged in plaintiffs' petition, may be briefly summarized as follows:
1. Knowledge of plaintiffs as to the location of the pond on defendant's property.
2. Status of plaintiffs and decedent as trespassers on defendant's plantation, only from which premises the pond was visible.
3. Limitation of the doctrine of the attractive nuisance to unknown, concealed or hidden dangers.
4. Negligence of plaintiffs, parents of the deceased minor.
With respect to the point first above noted, it is obvious from a mere reading of plaintiffs' petition that the plaintiffs were cognizant of the location of the pond. From this fact counsel for defendant draws the conclusion that the plaintiff parents were solely responsible for introducing their minor child to a view of the pond and the attendant attractions that existed. As a consequence, so it is argued, the effect of plaintiffs' claims would be to place a greater duty and burden upon defendant than that which was owed by parents.
We concede the ingenuity of the argument but deny its validity. We are unable to find any jurisprudence which would serve as authority for the proposition that parents are chargeable with negligence solely by reason of the fact that they have accompanied their minor children to points from which a view of what might be classified as an attractive nuisance could be obtained. Obviously the pronouncement of any such doctrine would, from a practical standpoint, indicate an obligation on the part of parents to keep all minor children carefully and continuously enclosed within four walls of a house or building or would make it incumbent to blindfold children when taking them out into the countryside.
We find nothing in the petition which would justify a holding relegating plaintiffs and their minor child or children to the status of mere trespassers on defendant's plantation. On the contrary, it is carefully set forth that plaintiffs visited certain tenants of defendants' plantation who lived in the immediate vicinity, and on the very premises where the allegedly dangerous pond was located, on frequent occasions, for the purpose of purchasing vegetables, eggs, etc. And, further, plaintiffs meticulously allege the friendship existing between their children and defendant's Negro tenants. In connection with this point, as well as with the several other contentions urged on behalf of defendant, we feel called upon to observe that extreme care must be used to avoid confusion between justifiable and certain conclusions which may be drawn from facts alleged in a petition and other conclusions which may or may not be responsive to other facts which can only be determined by trial on the merits. In our opinion the acceptance of the conclusion that plaintiffs and their minor children were trespassers on defendant's property would be a violent and untenable assumption completely at variance with the manner in which the facts have been alleged in plaintiff's petition.
The facts in Fincher v. Chicago R.I. P. Railway Co. et al.,143 La. 164, 78 So. 433, upon which authority defendant's counsel plainly relies in support of this point, are so clearly at variance with the facts alleged in the instant case as to be irreconcilable and, consequently, inapplicable with respect to the acceptance of the rule of law therein enunciated.
It is zealously urged that the doctrine of attractive nuisance does not apply to objects, no matter how dangerous and attractive to children, except in instances where the dangers are unknown, concealed or hidden. The case of McKenna v. City *Page 307 
of Shreveport, 16 La. App. 234, 133 So. 524, 526, is cited in support of this contention. We do not so interpret the holding, which is clearly enunciated in the opinion of the Court as follows:
"The weight of authority, however, is that the turntable or 'attractive nuisance' doctrine does not apply to a pond unlessthere is some unusual condition or artificial feature other than the mere water and its location, rendering the place peculiarly dangerous to children. The doctrine does not apply to objects attractive and dangerous to children unless the danger be unknown, concealed, or hidden.
"The plaintiff has not alleged in the present case that the pond had any unusual features rendering it peculiarly dangerous to children. Therefore, assuming the pond to be an ordinary one, we must further assume that the element of danger that did exist was not latent or unknown, but, on the contrary, was obvious. And as the plaintiff has not alleged that the child was of inferior intellect, we must assume that he possessed themental faculties usually found in a child of the age of ten. The average child of the age of ten years, under the weight of authority, is chargeable with knowledge of the danger of drowning." (Emphasis by the Court.)
It is very clear that the facts, as alleged in plaintiff's petition in the instant case, entirely destroy the application of the principles urged. In this suit plaintiffs have alleged artificial features such as the graded concrete walk entering the pond, and, additionally and conclusively, it is inescapable that an appreciation, understanding and knowledge of the danger of such a hazard as is here presented can not by any stretch of the imagination be attributed to a sixteen-months old child.
With respect to the argument of negligence on the part of the parents as a bar to recovery we are constrained to feel that such a conclusion would be entirely at variance with the facts set forth in the pleadings. Conceding the responsibility of parents, the question of negligence is not one which may be disposed of summarily without consideration of all the facts susceptible of presentation. We find nothing in the allegations as made which would indicate a disregard of parental duty and care on the part of parents toward a child of tender age.
Generally, the points here at issue have been adequately and effectively covered in the opinion of Mr. Justice Hamiter of the Supreme Court in the Saxton case, cited supra, which we accept as convincing authority for the conclusions to which we have herein given expression.
The accepted requirements applicable to the assertion of a claim under the attractive nuisance doctrine as quoted in the Saxton case, from an annotation, page 1263 of Volume 152 of A.L.R., are specifically enumerated as follows: "1. That the injured child was too young to understand and avoid the danger.
"2. That there was reason to anticipate the presence of such children, either because of some attraction on the premises, or because the danger was in some place where children had a right to be.
"3. That there was a strong likelihood of accident.
"4. That the danger was one other than those ordinarily encountered.
"5. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances."
Careful consideration and examination of plaintiff's petition by way of comparison with the requirements set forth, convinces us that each and every one has been adequately covered by the allegations of plaintiff's petition.
Finally, we feel assured that the denial of plaintiffs' right to a trial of this case, which result would be the consequence of action maintaining the exception, could be justified only by the premature acceptance of conclusions predicated upon an interpretation of facts beyond the outside of the allegations of the petition.
For the reasons assigned the judgment appealed from is reversed and set aside and there is now judgment overruling defendant's *Page 308 
exception of no cause and no right of action, and it is ordered that this cause be, and it is hereby, remanded to the Honorable the Seventh Judicial District Court in and for the Parish of Concordia, State of Louisiana, for further proceedings consistent with this opinion and the views herein expressed.