McBRIDE, Judge.
This appeal, taken by defendants, involves a claim for damages by plaintiff. The trial judge gave written reasons for judgment, which, we find, painstakingly state the facts of the case, and comprehensively cover all of the issues raised by the parties. We, therefore, adopt the below quoted portion of the reasons for judgment as the opinion of this court.
“Plaintiff, George Kieffer, brings this suit against Lawrence J. Reynolds, as sole *514 owner and proprietor of Larry & Katz, and against Reynolds’ insurer, The Coal Operators Casualty Company, for damages in the sum of $10,417.00 for burns which he allegedly received as a result of slipping on the floor of the toilet located in the rear of Larry & Katz, liquor store and bar room in this city.
“Plaintiff claims in his petition that the floor of the toilet was slippery and slimy, and that he fell upon entering the toilet, into a pool of caustic substance which was on the floor. He claims to have received superficial burns of the face, severe burns of the outer aspect of the right leg, right buttock and right knee, and that as a result of the particular injuries he sustained much pain and suffering and discomfort, and was confined to his bed from January 10, 1949, through February 1, 1949, and that at the time of the filing of this suit he was still under medical treatment.
“Defendant by way of answer files a general denial to the petition of plaintiff, and in the alternative there is a plea of contributory negligence setting forth that plaintiff was intoxicated to such an extent as to be unable to maintain his equilibrium; that he had lost all reasonable control of his mental faculties; that he failed to take ordinary and reasonable precautions against slipping and falling or stumbling; and that he failed to minimize his injuries by cleaning himself after falling down in' a public toilet, which failure to clean himself off aggravated the injury, if any.
“The testimony of plaintiff is to the effect that he was employed by the United States Treasury Department in the day time, and that he was a musician by night; that he played in the orchestra aboard the Steamer President, an excursion boat operating on the Mississippi River, out of New Orleans; that in the early morning hours of January 9, 1949, after working on the Steamer President, he had gone to an establishment known as Nelson & Lee’s, on Poydras Street; that he had a sandwich there and some four or five draft beers; that later Mr. and Mrs. Bolman came in (Mr. Bolman being a fellow musician) and the party proceeded in their separate cars to the establishment of Larry & Katz, arriving there at approximately 2:15 or 2:30 a. m. There the plaintiff had one or two beers and then proceeded to the toilet in the rear of the premises. Upon leaving the toilet he slipped and fell on the floor, which was wet. His band uniform which he had on at the time got wet as a result of his fall. He then returned to the bar and rejoined Mr. and Mrs. Bolman and Mr. Bolman then proceeded to the toilet. While Mr. Bolman was absent, plaintiff remarked to Mrs. Bolman that he had fallen down in the toilet and that his uniform trousers had gotten wet as a result of his fall. Plaintiff and Mr. and Mrs. Bolman continued to drink at the bar, plaintiff drinking three or four “Boiler-makers” (Bourbon whiskey with beer chaser) in all, and Mr. and Mrs. Bolman having Bourbon highballs.
“Mr. and Mrs. Bolman took the plaintiff home in their truck, plaintiff leaving his automobile parked in the vicinity of Larry & Katz’. The obvious reason for plaintiff’s being taken home by Mr. and Mrs. Bolman was that at the time the party left, about 3:30 a. m., plaintiff was in no condition, from the standpoint of sobriety, to drive his car home. Plaintiff admitted he was drunk when he left the establishment.
"Plaintiff arrived at his home some time around 4:00 a. m. His father and mother were awake at the time, and they testified that plaintiff undressed and went to bed unassisted. He awoke about 6:00 a. m. and took a bath. Upon arriving at his home he told his mother he had slipped in the toilet of Larry & Katz, and that his trousers were wet. She hung them on the rear porch to dry. When Mrs. Kieffer, plaintiff’s mother, went to the porch the next morning toi brush the trousers, they disintegrated as she brushed them. This was some time between daylight and 8:00 a. m.
“Mr. Kieffer noticed that his son was red all over and thought somebody had beaten him up, using the expression from the witness stand, ‘I thought someone had passed the post on him.’ This was explained to mean that somebody had struck him without warning.
*515 “Mrs. Kieffer called Mr. Reynolds’ establishment about 9:00 a. m. the morning of Sunday, January 9, 1949, in an attempt to inquire what substance may have been upon the floor of the toilet where her son had slipped and fallen, because she wanted to know what sort of treatment to administer to him at the time. The proprietor, Lawrence Reynolds, wasn’t there at the time and she left her number for him to call back. Later in the day she had a conversation with Mr. Reynolds and she contends that she was told that the brewery from whom he obtained his draft beer supplied a caustic which was used to clean and sanitize the floor of the toilet of the establishment.
“Mr. Kieffer visited the establishment of Larry & Katz once or twice that day for the purpose of finding out who may have beaten his son, and on the second occasion he brought with him the uniform his son had been wearing. At the time Mr. Kieffer saw Mr. Reynolds, Mr. Reynolds agreed to buy the plaintiff a new uniform. He, Mr. Reynolds, explained from the witness stand that this was merely a gesture of good will, regardless of whether or not the accident had happened on his premises.
“Defendant and his employees all denied that any caustic substance was ever used in the establishment for the purpose of cleaning or deodorizing the toilet. They contend that the only substance used to clean the toilet was ordinary washing powder bought from a grocery store in the neighborhood; that they used Grandma Powder, Soproco, a water softener, and similar preparations. The bar tender on duty at night, and his assistant, testified that they generally hose down the bar room first and the toilet last, after the customers leave, and that on the particular morning of the accident, as the plaintiff and Mr. and Mrs. Bolman remained in the establishment until after 3:30 a. m., the toilet was cleaned at about 6:00 a. m. Mr. Reynolds, on his return from ear-ly morning Mass, inquired why the place had not been cleaned, and he was told by the bar tenders that the last party, Mr. and Mrs. Bolman and the plaintiff, had left late.
The bar tender testified they proceeded to wash down the bar room and then the toilet after daylight, 6:00 a. m., and the record shows it was a foggy night. Defendant contends that the floor of the toilet was dry, even though it was a makeshift structure in the back yard, set off from a patio, and that there was a doorway but no door. None of defendant’s witnesses testified as to the condition of the toilet prior to the accident on this particular morning, that is as to whether the floor was wet or dry. One of the bar tenders did testify, however, that plaintiff’s clothes were in good condition so far as he was able to observe when plaintiff entered the establishment, but that he did not observe their condition at the time plaintiff left.
“One of defendant’s employees testified that the toilet floor was dry at 6:00 a. m. when they went out to clean it.
“Regardless of the testimony of the bar tenders anü of the defendant, Mr. Reynolds, to the effect that no caustic substance was ever used to clean the toilet room floor, nor that any was ever purchased except for a small can of lye used in an attempt to unstop a sink in the bar proper, this court believes that the conclusion is inescapable that the plaintiff fell in the toilet on the premises of Larry & Katz, into some acid or caustic substance on the floor.
“On his way home, defendant sat between Mr. and Mrs. Bolman, and whatever substance was on his clothes rubbed against and came in contact with the clothes of Mr. and Mrs. Bolman, causing white spots to appear on their clothes. Plaintiff’s shoes are in evidence and they are slightly discolored also.
"The court finds significant the testimony of one of the defendant’s witnesses that the plaintiff was sitting at the bar with his face resting upon his hand, and the fact that he suffered superficial burns of his face. He must have attempted to break his fall with his hands and his hands must have come in contact with the same substance that was on his clothes.
“Defendant cites the case of Lawson et al. v. D. H. Holmes Co., Ltd., La.App., *516 1941, 200 So. 163, where the court stated that Mrs. Lawson knew it was raining and that she is to be charged with knowledge of the fact that one is apt to slip on a wet surface, the defect being an apparent one; that there must be fault on the part of the store-keeper and ignorance of danger on the part of the customer.
“Defendant also cites the case of Farrow v. John R. Thompson [Co., 18 La.App. 404, 135 So. 80], 137 So. 604; The facts of this case are briefly that the plaintiff slipped on the floor of the defendant’s restaurant, which has been freshly mopped. The testimony of defendant was that there was nothing on the floor at the time of the plaintiff’s fall except some water which had fallen from a cup of hot water. One of the witnesses in that case, however, testified that the plaintiff had on high heels and that a lady of her weight would be safer on lower heels.
“Defendant also cites the case of Hendricks v. Maison Blanche Co., 5 La.App. 410, to the effect that a customer to recover from the owner of a store for an apparent defect in a building must show (his) own ignorance of the danger.
“The defendant also cites the case of Burdeaux v. Montgomery Ward [& Co., La.App.], 192 So. 728, 731, where a customer using the rest room facilities in a store entered a booth which had a raised floor and a swinging door which struck the customer on making her exit, causing her to fall and sustain injury. The court said in effect that the fact that the accident happened on the customer’s first visit to the store will not excuse her from not guarding against the effect of the door’s reaction, or not bearing in mind the presence of the step-off in the floor. This case held: ‘In the present case, as before touched upon, plaintiff made her way safely into the toilet without mishap. She was in as good, if not better position to leave it than when entering it.’
“Plaintiff testified that he fell in the toilet on defendant’s premises, and this testimony has not been refuted by the defendant. ■ Defendant simply says that he used no caustic fluids or acids on the floor of the toilet. The uniform that the plaintiff was wearing on the night of the accident has been filed in evidence. The rear of the right trouser leg of the pants of the uniform has disintegrated from a point below the pocket to the knee, and the front of the right trouser leg from the knee practically down to the ankle. There is a white color surrounding the holes in the uniform.
 “This court believes that the doctrine of res ipsa loquitur is applicable to the instant case. That doctrine does nothing but shift the burden of proof to the defendant, to exculpate himself if he can from any charge of negligence.
“This court cannot believe that a caustic substance, lye or acid, was not used by the defendant on the floor of the toilet, regardless of their testimony to the contrary. Dr. Bradburn testified that the plaintiff received burns which in his opinion were caused by a caustic fluid, lye or acid. Obviously the solution was on the floor of the toilet, and this court believes it was put there by the defendant or his employees or agents. It would require too great a stretch of the imagination to say that the solution on the toilet floor was placed there by some third party, unless it was done under defendant’s instructions and within defendant’s knowledge.
“It is true that the toilet on the premises of Larry & Katz was lighted, and if the floor was wet the plaintiff could have seen it, but he had no reason to believe that the substance on the floor was some strong chemical or caustic which would injure him in the event that he did slip and fall. He had no knowledge of the dangerous substance on the floor, which caused his injuries. The testimony of the defendant and his witnesses, as well as that of plaintiff and his witnesses fails to bear out the allegation of the defendant that at the time plaintiff went to the toilet he was intoxicated.
“The record does not show that plaintiff had any reason to believe, even after he fell, that he would be burned at all, much less as severely as he was, by having come into- contact with some substance that undoubtedly was on the floor. Therefore plaintiff had no reason to take off his *517 clothes or to take a bath before such time as he was apprised of the fact, from the burning of the chemical or caustic which came into contact with his skin due to his clothes’ being wet.
“Plaintiff got home at four o’clock; he bathed at six o’clock. His mother, Mrs. Kieffer, testified she began to apply epsom salts to the burns and called Dr. Brad-burn the following day, which was Monday. This accident happened early Sunday morning.
“Dr. W. P. Bradburn testified that the plaintiff had superficial burns of the face, more severe burns of the right leg, right knee and right buttock. The burn of the right buttock was a second degree burn. Dr. Bradburn first treated the plaintiff on January 10, 1949, and the last occasion upon which he was seen by Dr. Bradburn was June 1, 1949, for a check-up. The doctor prescribed baths and local applications. He stated that the elasticity had returned to plaintiff’s leg and knee on the day of the trial, Nov. 28, 1949.
“Dr. Bradburn testified that the plaintiff had suffered from burns from some type of fluid which was most probably caustic; that the plaintiff suffered intense pain and was given codeine from January 10 until February S, and probably one or two tablets thereafter. The doctor further testified that the burn on plaintiff’s right cheek of his buttock was about 2y2 by 2 inches, and that this was a deep second degree burn. Plaintiff also suffered a first degree burn of his right leg, extending from the junction of the middle and lower third of the outer portion of the leg to the knee, and from_ the midline at least two-thirds back to the outer circumference. He has a scar one inch by one inch, elliptical in shape, upon his knee. The burn on the left side of plaintiff’s face cleared up very rapidly.
“The doctor testified that for the first one or two or three weeks the pain was severe, and that plaintiff had pain even after he was out of bed; that the outer portion of the plaintiff’s leg was burned badly and that he prescribed baths twice a day, which was very painful; that plaintiff has no permanent disability, but the scars are permanent and will be with him for all time; that the skin still stretches on his buttock but this condition will clear up as the elasticity returns and the scar minimizes.
“There is no testimony in the record as to the plaintiff’s age, but the court judges him to be a man of about thirty years of age.
“Apparently plaintiff suffered severe and intense pain both day and night during the period of time he was confined to his bed. (Approximately eighteen days according to his own testimony.) He was unable to work at his job as a musician for three weeks, and if this was the duration of his inability to work as a musician it must be assumed that it was the duration of his inability to perform his duties on his day time job with the United States Government, Treasury Department. Dr. Brad-burn testified that he treated plaintiff while he was at home and saw him several times thereafter, one of the last times being May 6, 1949; that he saw him on June 1, 1949, for a check-up. * * * ”
Plaintiff was awarded a judgment of $3,500.00 for his physical injuries, plus loss of wages in the sum of $279.00, medical bills, $88.00, and loss of his uniform, $50.00, or a total of $3917.00.
In Horrell v. Gulf & Valley Cotton Oil Co., Inc., 16 La.App. 91, 133 So. 392, the plaintiff was allowed $3,000.00 for bums resulting from steam and caustic soda, his injuries being to the face, eyelids, eyes, and from one-fourth to one-third of the entire skin area of the body involving hands, arms, face, back, buttocks, and thighs. The plaintiff there was hospitalized for eleven days, was temporarily blind for three days, and, at the time of the trial, seventeen months after the accident, was still under treatment by an oculist.
In Schultz et ux. v. Kinabrow et al., La.App., 177 So. 450, the sum of $1,000.00 was allowed for injuries sustained by a three year old child from lye burns about the right eye, the child suffering third degree burns of a portion of the right cheek, first degree burns of the comea and conjunctiva of the right eye, and second de *518 gree burns of tbe eyelids of the right eye, with gluing of the lids.
In Cornell et ux. v. United States Fidelity & Guaranty Co. et al., La.App., 8 So.2d 364, $3,500.00 was allowed for severe burns upon a prematurely bom infant’s left shoulder, left flank of the body, and on the front and back of the left arm, as a result of contact with excessively heated water bottles.
It is a well-established principle that there is no rule or standard for fixing damages for personal injuries, and much discretion is left to the court. In the instant case, however, we believe that the award of $3,500.00 allowed plaintiff for his physical injuries is somewhat excessive, and that an award of $2,500.00 for that item of damage would do adequate and substantial justice.
It is ordered, adjudged, and decreed that the judgment appealed from be reduced to the sum of $2,917.00, and as thus amended, and in all other respects, the judgment is affirmed; defendants-appellants to pay ■costs of this court.
Amended and affirmed.